

FILED

MAY 1 2 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLLINOIS
E. ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

3:26-cv-00631-NJR

**RONNELL M. HUNTER,**
*Plaintiff,*

**v.**

**CITY OF BELLEVILLE, ILLINOIS; CITY OF FAIRVIEW HEIGHTS, ILLINOIS; CITY OF SWANSEA, ILLINOIS; ST. CLAIR COUNTY, ILLINOIS; U.S. POST OFFICE (Belleville); WALMART INC.; John Doe (Municipalities); John Doe (Corporate Entities)**
*Defendants.*

Case No.: _____
**JURY TRIAL DEMANDED**

# CIVIL RIGHTS COMPLAINT

## I. JURISDICTION AND VENUE

1. This action is brought pursuant to **42 U.S.C. §§ 1983 and 1985** to redress the deprivation of rights secured by the Fourth and Fourteenth Amendments. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.
2. Venue is proper as all relevant events occurred within St. Clair County, Illinois.

## II. INCORPORATION OF PRIOR NOTICE

3. Plaintiff incorporates by reference his original civil complaint filed on **January 9, 2023 (Case No. 23-LA-0018)**. This filing served as formal notice to Defendants regarding the systemic harassment and unlawful seizures Plaintiff sought to redress.

## III. STATEMENT OF FACTS

A. Pattern of Systemic Tortious Interference and Municipal Misconduct

**4. Historical Context and Defamatory Profiling (Pre-2018):** Prior to 2018, Plaintiff was subjected to a sustained campaign of character assassination and defamatory profiling. These actions, executed or encouraged by Municipal Defendants, were designed to erode Plaintiff's community standing and restrict his access to essential socioeconomic·resources. This environment of state-sponsored prejudice functioned as the foundational mechanism for the subsequent professional and social isolation of the Plaintiff.

**5. Unlawful Surveillance and Violation of Privacy (2018–2022):** Beginning in approximately 2018, Municipal Defendants transitioned from passive profiling to a period of "Notifiable Surveillance". During this phase, Plaintiff was subjected to a persistent and pervasive pattern of monitoring by law enforcement agents operating across multiple jurisdictions within St. Clair County. This surveillance was conducted without probable cause or reasonable suspicion, serving no legitimate public safety objective, and was intended solely to intimidate and harass the Plaintiff.

**6. Coordinated Tactical Intervention and Reckless Disregard for Safety (2022–2024):** The campaign escalated into active, coordinated interference involving both Municipal Defendants and private corporate entities. This included a pattern of **"Tortious Misinformation"** by entities such as Ashland Storage Centers East, designed to trigger pretextual law enforcement seizures.

- **The Walmart Incident:** This pattern of misconduct was furthered by Defendant Walmart, where agents utilized a false pretext of theft to coordinate a law enforcement "hand-off" with the Belleville Police Department.
- **Physical Penalization:** Despite Plaintiff's status as a frequent customer and his immediate need for shelter during a severe weather event, Defendants acted with reckless disregard for his physical safety by forcibly ejecting him into the storm.
- **Abuse of Authority:** While Plaintiff was left exposed to the elements during the resulting seizure, responding officers remained sheltered in their vehicles, demonstrating that the objective was the physical and social penalization of the Plaintiff rather than the investigation of a crime.

**7. Exploitation of Socioeconomic Vulnerability:** Throughout the relevant period, Defendants

intentionally leveraged Plaintiff's housing instability to create procedural barriers and administrative obstacles. These maneuvers were designed to trap the Plaintiff in "administrative loops," effectively frustrating his access to the courts and his ability to seek legal redress.

B. "Shadow Policing" and Extralegal Harassment

**8. Non-Consensual Seizures and Off-Record Intimidation:** Plaintiff at all times maintained a passive, non-confrontational posture and did not initiate interaction with Defendants. Notwithstanding this, Plaintiff was subjected to frequent, non-consensual stops and seizures by law enforcement. Many of these interactions were pointedly excluded from official records—a practice of "Shadow Policing" designed to provide Municipal Defendants with a veneer of plausible deniability while functioning as a mechanism of tortious interference.

**9. Retaliatory Conduct and Defamatory Slurs:** The ongoing nature of this harassment is evidenced by an incident following the initiation of this litigation. During the timeframe when the Plaintiff was attending to matters at the Courthouse, a derogatory and defamatory note was affixed to his vehicle at a Dierbergs store location in O'Fallon, Illinois. Upon information and belief, this act was committed by an agent of the Municipal Defendants or an individual acting in concert with them. This conduct, devoid of any legitimate law enforcement or business necessity, was executed solely to penalize the Plaintiff for his protected participation in the judicial process.

C. Adverse Actions and Procedural Obstruction:

**9. Coordinated Adverse Actions:** Following the Plaintiff's 2023 legal filings, Municipal Defendants intensified a series of **adverse actions** that coincided with critical litigation windows. These actions included law enforcement seizures specifically timed to create "jurisdictional barriers," effectively resulting in the Plaintiff's physical absence from key court hearings and obstructing his fundamental right to be heard.

## IV. CAUSES OF ACTION

### COUNT I: 42 U.S.C. § 1983 – CONCERTED MUNICIPAL ACTION

10. The Municipal Defendants, through their respective departments and authorized policymakers, reached a mutual understanding to subject the Plaintiff to a series of coordinated law enforcement interventions. This concerted action was rooted in the established customs and practices of the Defendant Cities, specifically designed to disrupt the Plaintiff's legal activities and suppress the prosecution of his constitutional claims.

## COUNT II: 42 U.S.C. § 1983 – MONELL LIABILITY

11. **Municipal Policy and Custom:** The constitutional deprivations—specifically the use of unrecorded "Shadow Policing" and the creation of "administrative loops"—were the direct result of formal policies, widespread customs, or the deliberate indifference of the Defendant Cities. 12. **Failure to Train and Supervise:** The Defendant Cities maintained a custom of failing to properly train and supervise agents regarding the rights of individuals with unstable housing status. This lack of oversight functioned as a "moving force" behind the systemic barriers that obstructed the Plaintiff's access to the judiciary and his freedom from unreasonable seizures.

## COUNT III: 42 U.S.C. § 1983 – DENIAL OF ACCESS TO COURTS

13. Defendants rendered Plaintiff's legal claims a nullity by physically and administratively barring his access to the judiciary through strategically timed **adverse actions** and the exploitation of procedural obstacles.

## COUNT IV: PRETEXTUAL REPORTING & BREACH OF DUTY (State Law Claims)

14. Defendants Walmart Inc. and John Doe (Corporate Entities) owed a duty to the Plaintiff to ensure that any reports made to law enforcement were accurate and based on reasonable investigation. The bad-faith nature of this reporting is evidenced by the decision to eject the Plaintiff into hazardous weather conditions. By utilizing law enforcement to remove a patron from a safe environment into a severe storm, Corporate Defendants breached their duty to avoid creating unnecessary physical hazards.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

15. **Outrageous Conduct:** The Defendants' coordinated campaign of surveillance, "shadow policing," and the forced exposure of the Plaintiff to hazardous physical/ social environments, including defamatory harassment which—constitutes extreme and outrageous conduct that exceeds all possible bounds of decency.

16. **Intent and Severity:** Defendants acted with the intent to cause, or with reckless disregard for the probability of causing, severe emotional distress. As a direct result of these **adverse actions**, Plaintiff has suffered and continues to suffer, significant mental anguish, severe emotional distress, and the profound psychological burden of sustained social and professional isolation. This conduct has directly contributed to a climate of community contempt that has fundamentally disrupted the Plaintiff's peace and professional stability.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ronnell M. Hunter respectfully requests that this Court enter judgment in his favor and against Defendants, granting the following relief:

**A. Declaratory Relief:** A declaration that the policies, practices, and **adverse actions** of the Defendants as described herein—including the use of "Shadow Policing," "administrative loops," and the exploitation of tactical vulnerabilities—constitute a violation of the Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

**B. Permanent Injunctive Relief:** An order permanently enjoining Defendants, their agents, and employees from engaging in **vituperative conduct**, discriminatory profiling, or the utilization of unrecorded law enforcement interventions against the Plaintiff.

**C. Mandatory Injunctive Relief and Oversight:** An order requiring the Defendant Cities to implement rigorous training and independent oversight protocols specifically designed to eliminate the use of procedural barriers that obstruct the Plaintiff's fundamental right of access to the judiciary.

**D. Compensatory and Special Damages:** An award of compensatory damages in an amount to be determined at trial to redress the Plaintiff's:

- **Economic Losses:** Including loss of any professional or work-related opportunities land out-of-pocket expenses.
- **Tortious Injury:** Including significant reputational harm, severe emotional distress, and the psychological burden of sustained social and professional isolation.

**E. Punitive Damages:** An award of punitive damages against the individual Defendants, in their individual capacities, to punish and deter the willful, malicious, and reckless disregard for the Plaintiff's constitutional rights and physical safety.

**F. Statutory Fees and Costs:** An award of reasonable attorney's fees (if applicable), expert witness fees, and all costs of this litigation pursuant to 42 U.S.C. § 1988.

**G. Other Relief:** Such other and further relief as this Court deems just, equitable, and proper.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 4, 2026.

Respectfully Submitted,

_____

Ronnell M. Hunter, *Pro Se*
*627 N Illinois St., Apt. A, Belleville, Illinois, 62220*
314-497-0015
ronnellh80@gmail.com

FROM:

Ronnell M. Hunter

627 N Illinois St.

Apt. A

Belleville, Illinois, 62220

CERTIFIED MAIL

9589 0710 5270 3709 5270 0...



U.S. POSTAGE PAID
FCM LG ENV
O FALLON, IL 62269
MAY 04, 2026

62201

RDC 99        $12.14

S2324P500497-05

TO:

Clerk of the United States Dist. Court

750 Missouri Avenue

East St. Louis, Illinois, 62201

MAIL CLEARED US MARSHALS

Utility Mailer
10 1/2" x 16"

Ready Post.

Visit USPS.com® for Shipping Supplies & Services

PULL TAB TO OPEN

**93300007**
**Utility Mailer**
**10" x 14"** (usable inside dimension)

 Please Recycle

RECEIVED
MAY 12 2026

**Utility Mailer**



AUC-093
Product Code 93300007 · March 2019
www.usps.com
A product of the United States Postal Service ®
MADE IN THE U.S.A.

 **UNITED STATES POSTAL SERVICE**®